UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
SOUTHERN DIVISION
LONDON

| | | |
|---|---|---|
| PHELPS KY OPCO, LLC, *doing business as* Good Shepherd Health and Rehabilitation Center, | ) ) ) ) | |
| and | ) ) | |
| PLAINVIEW HEALTH CARE PARTNERS LLC, | ) ) ) | No. 6:26-CV-24-REW-EBA |
| Petitioners, | ) ) | OPINION & ORDER |
| v. | ) ) | |
| JEANIE FOGLE, *as power of attorney for* Harold Price, | ) ) ) ) | |
| Respondent. | ) | |

\*\*\* \*\*\* \*\*\* \*\*\*

About one year ago, Jeanie Fogle, as power of attorney, initiated a lawsuit on behalf of Harold Price in Kentucky State Court. *See generally* DE 1-1. Fogle alleges that Price has suffered various physical and emotional injuries while living at Good Shepherd Health and Rehabilitation Center ("Good Shepherd"). *See id.* ¶¶ 23–30, at 9–11. Notably, the defendants in the state action include Phelps KY Opco LLC ("Phelps"), *see id.* ¶ 4, at 3–4, Plainview Health Care Partners LLC ("Plainview"), *see id.* ¶ 7, at 5, and Angie Hurley, an administrator at Good Shepherd, *see id.* ¶ 14, at 8. The LLC defendants trace to members that all are New York citizens, *see id* ¶¶ 4, 7, at 3–5, while Price and Hurley are Kentucky citizens, *see id.* ¶¶ 3, 14, at 3, 8.

Soon after Fogle initiated the state court action, Phelps and Plainview (collectively, "Petitioners") filed a Petition to compel arbitration with this Court. *See* DE 1. In response, Fogle filed a motion to dismiss the Petition. *See* DE 8. Broadly, she asserts that the Court should abstain

from exercising jurisdiction over the Petition due to the related state action. *See* DE 8-3 at 15–18. More specifically, she argues that dismissal is proper under Federal Rule of Civil Procedure 12(b)(1), (6), and (7). *See id.* at 3–15, 19–25. Petitioners filed a response, *see* DE 11, and Fogle replied, *see* DE 12. Shortly after, Petitioners filed a motion for leave to exceed the page limit on their response, one decried by Fogle as exceeding local rules. *See* DE 13. Ultimately, the Court concludes that dismissal is unwarranted. As a result, the Court DENIES DE 8.

## I.    BACKGROUND

Around July 13, 2021, Price was admitted to Good Shepherd—a nursing facility located in Kentucky—as a resident. *See* DE 1 ¶ 11, at 3. Good Shepherd is entirely owned and operated by Phelps. *See id.* During the admissions process, Price signed a document styled as an Agreement for Alternative Dispute Resolution ("Agreement"), *see* DE 1-2, which requires the arbitration of "[a]ny and all legal controvers[ies], dispute[s], disagreement[s] or claim[s] of any kind between the Facility and Resident arising from or relating in any way to this ADR Agreement or the Resident's stay at the Facility." *See* DE 1 ¶ 12, at 3–4.

The Agreement further specifies: (1) that it encompasses claims against Good Shepherd's "employees, agents, officers, directors, management company, building owner, landlord, parent company, subsidiary [and] affiliate," *see id.* ¶ 13, at 4; (2) that it includes "[a]ll claims based in whole or in part on the same incident, transaction, occurrence or course of care and services provided by the Facility to Resident," *see id.* ¶ 14, at 4; and (3) that the Federal Arbitration Act ("FAA"), 9 U.S.C. §§ 1 *et seq.*, governs its terms, along with "all proceedings relating to the arbitration of any Claim," *see id.* ¶ 17, at 4. The Agreement also instructs that:

> By signing below, the person signing attests that he or she . . . has read and understood to his or her own satisfaction the terms of this ADR Agreement[,] . . . understands that he or she is waiving his or her constitutional right to a jury trial[,] . . . enters into this ADR Agreement by his or her own free choice[,] . . .

> understands that . . . signing this ADR is not a condition for admission[,] . . . and . . . understands that this ADR Agreement may be revoked within 30 days of signing, or within 30 days of re-admission, by written notice to the Facility.

*See id.* ¶ 19, at 5.  Price never provided any written notice signaling an intent to revoke the Agreement.  *See id.* ¶ 18, at 5.

On November 6, 2024, Fogle filed a complaint in Kentucky state court on Price's behalf. *See generally* DE 1-1.  Generally, Fogle alleges that Price has "suffered accelerated deterioration of his health and physical condition beyond that caused by the normal aging process" and "unnecessary loss of personal dignity, extreme pain and suffering, degradation, mental anguish, disability, and disfigurement" while residing at Good Shepherd.  *See id.* ¶¶ 28–29, at 10–11. Specifically, Fogle brings claims for negligence, medical negligence, corporate negligence, and corporate manipulation of funds.  *See generally id.*  She named a range of defendants, including Phelps, Plainview, Hurley, and James Sloan.  *See id.* ¶¶ 4–15, at 3–8.  Like Hurley, Sloan is a Kentucky resident who was sued in his capacity as an administrator at Good Shepherd.  *See id.* ¶ 13, at 8.  However, Sloan was never served.  *See* DE 11 at 24 n.4.  While Fogle implies that Petitioners demanded arbitration in the state court, *see* DE 8-3 at 2, Petitioners state otherwise and contend they simply have answered, *see* DE 11 at 24 n.5.

About two months after Fogle initiated that lawsuit, Phelps and Plainview filed the instant Petition.  *See* DE 1.  In their Petition, they seek to:  (1) compel arbitration of the claims asserted in the state court action, *see id.* ¶¶ 21–27, at 5–7; (2) stay the state court action pending arbitration under the terms of the binding Agreement, *see id.* ¶¶ 24–25, at 6; (3) enjoin Fogle from pursuing her claims in state court, *see id.* ¶¶ 28–32, at 7–8; and (4) secure related relief, *see id.* at 8. Petitioners invoke the Court's diversity jurisdiction, asserting that all individual members of Phelps and Plainview are citizens of New York, *see id.* ¶¶ 1–3, at 2, that Fogle's citizenship is

irrelevant, *see id.* ¶ 4, at 2, that Price is a citizen of Kentucky, *see id.*, and that more than $75,000 is in controversy in the action, *see id.* ¶ 6, at 2–3.

Shortly after, Fogle filed her motion to dismiss the Petition in its entirety. *See* DE 8. She argues that the Court lacks subject-matter jurisdiction, *see* DE 8-3 at 3–10, that Petitioners failed to state a claim upon which relief can be granted, *see id.* at 19–25, that Petitioners neglected to join Hurley, an indispensable party, *see id.* at 10–15, and that the Court should abstain from deciding on the Petition due to the related state action, *see id.* at 15–18. Petitioners then filed a response to Fogle's motion that exceeded the page limit set out in Local Civil Rule 7.1(d). *See* DE 11. In reply, Fogle addressed the substance of Petitioners' filing and also asserted that Petitioners' response should be stricken from the record due to their failure to comply with the applicable page limit. *See* DE 12. Petitioners later filed a motion for leave to exceed the page limit on their response. *See* DE 13. Fogle did not respond. Both motions are now ripe for review.

## II.   LEGAL STANDARD

### A.  Federal Rule of Civil Procedure 12(b)(1)

A party may, by motion, seek dismissal of an action for "lack of subject-matter jurisdiction." FED. R. CIV. P. 12(b)(1). Federal courts are courts of limited jurisdiction, only possessing the power to hear cases upon specific statutory and constitutional authorization. *See Kokkonen v. Guardian Life Ins. Co. of Am.*, 114 S. Ct. 1673, 1675 (1994) (citing *Willy v. Coastal Corp.*, 112 S. Ct. 1076, 1080 (1992); *Bender v. Williamsport Area Sch. Dist.*, 106 S. Ct. 1326, 1331 (1986)). Notably, federal district courts "have original jurisdiction of all civil actions where the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs, and is between . . . citizens of different States." 28 U.S.C. § 1332(a); *see also* U.S. Const. art. III, § 2, cl. 1. Courts have consistently held that "complete diversity" is necessary for diversity

jurisdiction, meaning that all plaintiffs must be of citizenship diverse from that of all defendants. *See, e.g.*, *U.S. Motors v. Gen. Motors Eur.*, 551 F.3d 420, 423 (6th Cir. 2008).

An individual's citizenship is defined by his place of domicile, i.e., where he resides and intends to remain. *See Mason v. Lockwood, Andrews & Newman, P.C.*, 842 F.3d 383, 390 (6th Cir. 2016) (citing *Miss. Band of Choctaw Indians v. Holyfield*, 109 S. Ct. 1597, 1608 (1989)). When considering the citizenship of the parties, "a federal court must disregard nominal or formal parties and rest jurisdiction only upon the citizenship of the real parties to the controversy." *Maiden v. North American Stainless, L.P.*, 125 F. App'x 1, 3 (6th Cir. 2004) (quoting *Navarro Sav. Ass'n v. Lee*, 100 S. Ct. 1779, 1782 (1980)). The "real parties" to the controversy are the entities actually "entitled to enforce the right asserted under the governing substantive law." *Id.* (quoting *Certain Interested Underwriters at Lloyd's v. Layne*, 26 F.3d 39, 42–43 (6th Cir. 1994)). Importantly, "a person authorized to bring suit solely on the basis of a power of attorney is not a real party in interest." *Doe ex rel. Doe v. St. Edward High School*, No. 22-CV-440, 2022 WL 2717018, at *2 n.2 (N.D. Ohio July 13, 2022) (quoting *Dexter v. Mac*, No. 13-14133, 2015 WL 93250, at *4 (E.D. Mich. Jan. 7, 2015)); *see also* 4 MOORE'S FEDERAL PRACTICE § 17.10 (3d ed. 2010). A limited liability corporation is considered a citizen of every state where its individual members are citizens. *See Delay v. Rosenthal Collins Grp., LLC*, 585 F.3d 1003, 1005 (6th Cir. 2009) ("[A] limited liability company has the citizenship of each of its members.").

Relevant to the present matter, federal courts have jurisdiction over petitions to compel arbitration on state law claims, so long as the requirements for diversity jurisdiction are satisfied. *See, e.g.*, *PaineWebber, Inc. v. Cohen*, 276 F.3d 197, 199–200 (6th Cir. 2001). In particular, when a party fails, neglects, or refuses to arbitrate under a written agreement for arbitration, an aggrieved party may, pursuant to the FAA, "petition any United States district court which . . . would have

jurisdiction . . . in a civil action . . . of the subject matter of a suit arising out of the controversy between the parties, for an order directing that such arbitration proceed in the manner provided for in such agreement."  9 U.S.C. § 4.  While the Supreme Court has decided that § 4 permits district courts to "look through" petitions to compel arbitration to assess whether federal jurisdiction is proper, that decision only referenced petitions "predicated on an action that 'arises under' federal law."  *Vaden v. Discover Bank*, 129 S. Ct. 1262, 1273 (2009); *see also Brookdale Senior Living, Inc. v. Walker*, No. 5:15-CV-206, 2016 WL 1255722, at *2 (E.D. Ky. Mar. 29, 2016) ("Contrary to the Defendant's claims, *Vaden* does not compel a 'look through' analysis in a diversity case.").

### B.  Federal Rule of Civil Procedure 12(b)(6)

A party may also move to dismiss an action for "failure to state a claim upon which relief can be granted."  FED. R. CIV. P. 12(b)(6); *see also id.* at 8(a)(2) ("A pleading that states a claim for relief must contain . . . a short and plain statement of the claim showing that the pleader is entitled to relief.").  Crucially, when evaluating a Rule 12(b)(6) motion, the Court is required to "accept all the [non-moving party's] factual allegations as true and construe the [pleading] in the light most favorable to the [non-moving party]."  *Hill v. Blue Cross & Blue Shield of Mich.*, 409 F.3d 710, 716 (6th Cir. 2005).

In order "[t]o survive a motion to dismiss, a [pleading] must contain sufficient factual matter, accepted as true, 'to state a claim to relief that is plausible on its face.'"  *See Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 127 S. Ct. 1955, 1974 (2007)).  If the non-moving party's pleading does not do so, or if the non-moving party is barred from recovering on their claims as a matter of law, then dismissal is warranted.  *League of United Latin Am. Citizens v. Bredesen*, 500 F.3d 523, 527 (6th Cir. 2007) (citing *Twombly*, 127 S. Ct. at 1969).  While the non-moving party's pleading need not include detailed factual allegations, it

needs to include something "more than labels and conclusions." *Southfield Educ. Ass'n v. Southfield Bd. of Educ.*, 570 F. App'x 485, 487–88 (6th Cir. 2014) (quoting *Casias v. Wal-Mart Stores, Inc.*, 695 F.3d 428, 435 (6th Cir. 2012)). And although the pleading's well-pleaded factual allegations should be assumed true, they "must do more than create speculation or suspicion of a legally cognizable cause of action; they must show *entitlement* to relief." *Bredesen*, 500 F.3d at 527 (quoting *Twombly*, 127 S. Ct. at 1965).

## C. Federal Rule of Civil Procedure 12(b)(7)

A party may likewise move to dismiss an action for "failure to join a party under Rule 19." FED. R. CIV. P. 12(b)(7). Rule 19 creates "a three-step analysis for determining whether a case should proceed in the absence of a particular party." *PaineWebber, Inc.*, 276 F.3d at 200 (citing *Keweenaw Bay Indian Cmty. v. Michigan*, 11 F.3d 1341, 1345 (6th Cir. 1993)). First, the Court must assess whether the absent party "is necessary to the action and should be joined if possible." *Soberay Mach. & Equip. Co. v. MRF Ltd., Inc.*, 181 F.3d 759, 763–64 (6th Cir. 1999). A person is a necessary party if:

> (A) in that person's absence, the court cannot accord complete relief among existing parties; or (B) that person claims an interest relating to the subject of the action and is so situated that disposing of the action in the person's absence may: (i) as a practical matter impair or impede the person's ability to protect the interest; or (ii) leave an existing party subject to a substantial risk of incurring double, multiple, or otherwise inconsistent obligations because of the interest.

FED. R. CIV. P. 19(a)(1). Second, if the absent party is deemed necessary, the Court must consider "whether the party is subject to personal jurisdiction and can be joined without eliminating the basis for subject matter jurisdiction." *PaineWebber, Inc.*, 276 F.3d at 200 (citing *Keweenaw Bay Indian Cmty.*, 11 F.3d at 1345–46); *see also* FED. R. CIV. P. 19(a) ("A person who is subject to service of process and whose joinder will not deprive the court of subject-matter jurisdiction must be joined as a party . . . ."). Third, if the absent party's joinder will defeat federal jurisdiction, the

Court must determine whether that party is, in the parlance, indispensable to the action. *See PaineWebber, Inc.*, 276 F.3d at 200. Specifically, the Court is tasked with conducting "an analysis under Rule 19(b) to 'determine whether in equity and good conscience the action should proceed among the parties before it, or should be dismissed, the absent party [being] thus regarded as indispensable.'" *Soberay Mach. & Equip. Co.*, 181 F.3d at 764 (quoting FED. R. CIV. P. 19(b)).

If the necessary, yet absent, party is found to be indispensable, and if the party cannot be joined without defeating federal jurisdiction, then the action must be dismissed in accordance with Rule 19 and Rule 12(b)(7). *See PaineWebber, Inc.*, 276 F.3d at 200. Factors to consider in determining whether a party is indispensable include:

> (1) the extent to which a judgment rendered in the person's absence might prejudice that person or the existing parties; (2) the extent to which any prejudice could be lessened or avoided by: (A) protective provisions in the judgment; (B) shaping the relief; or (C) other measures; (3) whether a judgment rendered in the person's absence would be adequate; and (4) whether the plaintiff would have an adequate remedy if the action were dismissed for nonjoinder.

FED. R. CIV. P. 19(b). However, if the Court determines that the absent party is dispensable, then "that potential party need not be joined and the action can proceed with the original litigants." *PaineWebber, Inc.*, 276 F.3d at 201.

### D. Abstention and *Colorado River*

In *Colorado River Water Conservation District v. United States*, the Supreme Court noted that federal courts have a "virtually unflagging obligation . . . to exercise the jurisdiction given them." 96 S. Ct. 1236, 1246 (1976). However, the Court also carved out an extraordinary and narrow exception for certain "situations involving the contemporaneous exercise of concurrent jurisdictions." *Id.* This principle, now known as the *Colorado River* abstention doctrine, "recognizes that . . . 'considerations of judicial economy and federal-state comity may justify abstention in situations involving the contemporaneous exercise of jurisdiction by state and federal

courts.'" *Healthcare Co. Ltd. v. Upward Mobility, Inc.*, 784 F. App'x 390, 393 (6th Cir. 2019) (quoting *Romine v. Compuserve Corp.*, 160 F.3d 337, 339 (6th Cir. 1998)).  When conducting a *Colorado River* analysis, the Court must first decide whether the relevant state and federal proceedings are parallel.  *See id.* (citing *Romine*, 160 F.3d at 339).  If so, the Court is then tasked with weighing the eight *Colorado River* factors.  *See id.* (citing *Romine*, 160 F.3d at 340–41).

State and federal actions are "parallel" when the facts underlying both are "substantially similar."  *Bates v. Van Buren Twp.*, 122 F. App'x 803, 806 (6th Cir. 2004) (quoting *Romine*, 160 F.3d at 340).  Importantly, the "proceedings need not be identical."  *Id.* (citing *Romine*, 160 F.3d at 340).  Neither the fact that a state action is marginally broader, *see id.*, nor the fact that a state action involves slightly different litigants, *see Heitmanis v. Austin*, 899 F.2d 521, 528 (6th Cir. 1990), will lead the Court to automatically conclude that a state action is not parallel to a related federal action, for abstention purposes.

If the Court does conclude that the state action is parallel, the Court must next determine whether abstention is proper by balancing the following factors distilled through the Sixth Circuit's interpretation of Supreme Court authority:

> (1) whether the state court has assumed jurisdiction over any res or property; (2) whether the federal forum is less convenient to the parties; (3) avoidance of piecemeal litigation; . . . (4) the order in which jurisdiction was obtained[;] . . . (5) whether the source of governing law is state or federal; (6) the adequacy of the state court action to protect the federal plaintiff's rights; (7) the relative progress of the state and federal proceedings; and (8) the presence or absence of concurrent jurisdiction.

*Romine*, 160 F.3d at 340–41 (internal citations omitted).  Notably, these factors are not intended to be used as "a mechanical checklist.  Rather, they require 'a careful balancing of the important factors as they apply in a give[n] case' depending on the particular facts at hand."  *Id.* at 341 (quoting *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 103 S. Ct. 927, 937 (1983)).

### III.  ANALYSIS

Petitioners' motion for leave to exceed the page limit on their response establishes sufficient grounds for relief.  *See* DE 13.  The Court admonishes against the risk and noncompliance reflected in such unpermitted briefing.  However, in context, the Court grants DE 13.  The Court further concludes that none of the four arguments raised in Fogle's motion to dismiss warrants dismissal of the Petition.  *See* DE 8-3.  As a result, the Court denies DE 8.

### A.  Petitioners' Motion for Leave to Exceed Page Limit Is Granted

In her reply, Fogle accurately notes that Petitioners' 35-page response exceeds the page limit set out in Local Civil Rule 7.1(d), which specifies that "[m]otions and responses may not exceed 25 pages without leave of Court."  *See* DE 12 at 3.  Petitioners did, however, file a motion for leave to exceed the prescribed page limit after Fogle's reply.  *See* DE 13.  Fogle did not respond to that filing.  Thus, the motion is ripe for review.

As a general matter, the Court first notes that "[t]he interpretation and application of local rules are matters within the district court's discretion."  *Barnaby v. Witkowski*, 758 F. App'x 431, 435 (6th Cir. 2018) (internal quotation marks omitted) (quoting *S.S. v. E. Ky. Univ.*, 532 F.3d 445, 451 (6th Cir. 2008)).  Fogle's motion to dismiss raises four elaborate arguments, some of which warranted extensive responses.  *Cf. Honorable Ord. of Ky. Colonels, Inc. v. Globcal Int'l*, No. 3:23-CV-43, 2023 WL 2731044, at *1 (W.D. Ky. Mar. 30, 2023) (granting a motion for leave to exceed the applicable page limit because there was "no prejudice" and "the requested additional pages [were] reasonable").  Further, it does not appear that granting Petitioners' motion would unfairly prejudice Fogle, who managed to reply to the entire substance of Petitioner's response without approaching the applicable page limit.  *See Huelett v. Louisville Paving Co.*, No. 3:23-CV-420, 2025 WL 552686, at *2 (W.D. Ky. Feb. 19, 2025) (granting a motion for leave to exceed

the applicable page limit "for purposes of efficiency, and because the extended page count does not change the results or prejudice the movant in this matter").  Finally, for purposes of efficiency and judicial economy, the Court would prefer to resolve the merits of Fogle's motion by relying on all of the briefing presently submitted.  *See id.*  As such, in its discretion and this time, the Court GRANTS DE 13.

### B.  Fogle's Motion to Dismiss Is Denied

#### 1.  The Court has subject-matter jurisdiction over the action, and Fogle's argument under Rule 12(b)(1) fails

The parties agree that Price is a Kentucky citizen, that Phelps and Plainview are New York citizens, that Fogle's citizenship is irrelevant, and that the amount-in-controversy exceeds $75,000. *See generally* DE 8-3; DE 11; DE 12.  They only disagree as to whether the Court may "look through" the Petition to determine if it can properly exercise jurisdiction by considering Hurley's state-action inclusion.  *See* DE 8-3 at 3–10; DE 11 at 7–10.  Fogle specifically argues that looking through the Petition would reveal that Hurley is essential to the action.  *See* DE 8-3 at 3–10.

Neither the Supreme Court nor the Sixth Circuit has decided whether courts may look through petitions to compel arbitration, for jurisdictional purposes, when sitting in diversity jurisdiction.  *See Phelps KY Opco, LLC v. Working*, No. 6:26-CV-23, 2026 WL 63511, at *2 (E.D. Ky. Jan. 8, 2026) ("The Supreme Court has adopted the 'look through' approach to federal question jurisdiction, but has not yet addressed whether the same applies to diversity jurisdiction. The Sixth Circuit has not addressed this issue, either."  (internal citation omitted)).  However, the Eastern District of Kentucky has consistently found that the look through approach does not apply in such instances.  *See, e.g.*, *Boyd Nursing & Rehab., LLC v. Wells*, 624 F. Supp. 3d 705, 713 (E.D. Ky. 2022); *GGNSC Stanford, LLC v. Gilliam*, 205 F. Supp. 3d 884, 888 (E.D. Ky. 2016); *Brookdale Senior Living Inc. v. Stacy*, 27 F. Supp. 3d 776, 782 (E.D. Ky. 2014) (citing *Northport*

*Health Servs. of Ark., LLC v. Rutherford*, 605 F.3d 483, 490–91 (8th Cir. 2010)). That finding is premised on sound logic, as any effort to look through a petition to determine whether an absent party might defeat diversity jurisdiction would seem to necessarily mirror the Rule 12(b)(7) and Rule 19 analyses. That inquiry is better suited to the established Rule 12(b)(7) and Rule 19 frameworks. Simply put, *Vaden*, which addressed only the federal question context, does not direct a look-through approach where courts assert diversity jurisdiction over an FAA petition. *See Hermès of Paris, Inc. v. Swain*, 867 F.3d 321, 325 n.5 (2d Cir. 2017) (stating principles and citing to harmony among circuits facing this issue post-*Vaden*). As a result, the Court declines to look through the Petition and denies relief under Rule 12(b)(1). Jurisdiction over the Petition, analyzed with respect to extant federal parties, plainly exists.

### 2. Petitioners have plausibly alleged that the Agreement is valid, and Fogle's argument under Rule 12(b)(6) fails

Fogle asserts that Petitioners have failed to state a claim upon which relief can be granted because they have not sufficiently alleged that the Agreement is valid, and thus, have not sufficiently alleged that the parties agreed to arbitrate. *See* DE 8-3 at 19–25. In particular, Fogle suggests that Price lacked capacity to assent to the Agreement, *see id.* at 20–23, that the Agreement does not evidence a transaction involving interstate commerce, *see id.* at 23–24, and that the Agreement is both procedurally and substantively unconscionable under Kentucky law, *see id.* at 24–25. At this stage, the Court need only determine whether the Petition includes sufficient factual matter, if accepted as true, to state a plausible claim for relief. *See Ashcroft*, 129 S. Ct. at 1949 (citing *Twombly*, 127 S. Ct. at 1974). When evaluating whether a party has validly agreed to arbitrate, the Court must "apply ordinary state-law principles that govern the formation of

contracts." *Samons v. 84 Lumber Co.*, No. 5:22-CV-249, 2022 WL 16541160, at *3 (E.D. Ky. Oct. 28, 2022) (quoting *First Options of Chi., Inc. v. Kaplan*, 115 S. Ct. 1920, 1924 (1995)).[1]

First, Price's alleged lack of capacity. Fogle correctly asserts that "arbitration is a matter of contract and a party cannot be required to submit to arbitration any dispute which he has not agreed so to submit." *AT&T Techs., Inc. v. Commc'ns Workers of Am.*, 106 S. Ct. 1415, 1418 (1986) (quoting *United Steelworkers of Am. v. Warrior & Gulf Navigation Co.*, 80 S. Ct. 1347, 1353 (1960)). However, Petitioners allege that Price formed a valid contract. The Petition notes that Price signed the Agreement and that he failed to revoke the Agreement within 30 days. *See* DE 1 ¶ 18, at 5. Per the Agreement's unambiguous terms, those actions at least plausibly bound Price. *See id.* ¶ 19, at 5. To be sure, Price *might* have lacked capacity to contract.[2] But whether he actually did exceeds the Court's present inquiry and the pleading scope. *See, e.g.*, *GGNSC Louisville St. Matthews, LLC v. Saunders*, No. 3:17-CV-185, 2017 WL 2196752, at *5 (W.D. Ky. May 18, 2017) (declining to grant relief under Rule 12(b)(6) "based on the argument that there was not a valid agreement to arbitrate as a result of [a party's] alleged lack of capacity"). And while Fogle cites *St. Matthews Care & Rehab Center, LLC v. Wood*, No. 2023-CA-0823, 2024

---

[1] While not in dispute, it is worth stating for completeness why Kentucky law is the applicable substantive law in this matter. A federal court exercising diversity jurisdiction must apply the choice-of-law rules of the state in which it sits. *See Doe v. Etihad Airways, P.J.S.C.*, 870 F.3d 406, 435 (6th Cir. 2017). Kentucky courts apply the "most significant relationship" test to breach of contract claims. *See State Farm Mut. Auto. Ins. Co. v. Hodgkiss-Warrick*, 413 S.W.3d 875, 878 (Ky. 2013). Under that test, "[t]he rights and duties of the parties with respect to an issue in contract are determined by the local law of the state which, with respect to that issue, has the most significant relationship to the transaction and the parties." *Id.* (quoting RESTATEMENT (SECOND) CONFLICT OF LAWS § 188(1) (1971)). In making that determination, courts should consider "the place or places of negotiating and contracting; the place of performance; the location of the contract's subject matter; and the domicile, residence, place of incorporation and place of business of the parties." *Id.* at 878–79. Here, Price is domiciled in Kentucky. Phelps operates in Kentucky. The Agreement was entered into in Kentucky. And the terms of the Agreement were performed in Kentucky. As a result, the Court finds that Kentucky has the most significant relationship to the contract at issue and applies Kentucky law.
[2] Though Kentucky law does impose a "presumption of sanity and capacity to contract." *Bardstown Med. Invs., Ltd. v. Black*, No. 2017-CA-1840, 2019 WL 1504383, at *2 (Ky. Ct. App. Apr. 5, 2019) (quoting *Est. of Adams ex rel. Mitchell v. Trover*, 547 S.W.3d 545, 554 (Ky. Ct. App. 2018)).

WL 2788471 (Ky. Ct. App. May 31, 2024), in support of her argument, that case is simply inapposite to the present matter. The *Wood* court conducted a thorough review of a fulsome record before determining that Edith Wood lacked the capacity to assent to the contract and denying the appellants' motion to compel arbitration. *See id.* at *2–3. That kind of searching analysis is entirely inconsistent with the Court's present task under Rule 12(b)(6). Accordingly, Price's alleged lack of capacity will not result in dismissal at this time.

Second, the Agreement's relationship to interstate commerce. The FAA provides that "[a] written provision in any . . . *contract evidencing a transaction involving commerce* to settle by arbitration a controversy thereafter arising out of such contract or transaction . . . shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2 (emphasis added). The Supreme Court has interpreted the phrase "involving commerce" to be coterminous with the phrase "affecting commerce," thus implying "a full exercise of constitutional power." *Allied-Bruce Terminix Cos., Inc. v. Dobson*, 115 S. Ct. 834, 841 (1995). As other jurists in the Eastern District of Kentucky have recognized, "[i]nterstate commerce is defined broadly and healthcare is an economic activity that represents a general practice subject to federal control." *Gilliam*, 205 F. Supp. 3d at 894 (citing *Ping v. Beverly Enters., Inc.*, 376 S.W.3d 581, 589 (Ky. 2012)); *see also Marmet Health Care Ctr., Inc. v. Brown*, 123 S. Ct. 1201 (2012) (finding that three arbitration agreements between residents and nursing homes were controlled by the FAA, and thus, involved commerce). As a result, the Court readily concludes that the Agreement evidences a transaction involving interstate commerce.

And third, the Agreement's purported unconscionability. Kentucky courts have defined an unconscionable contract as "one which no man in his senses, not under delusion, would make, on the one hand, and which no fair and honest man would accept, on the other." *Conseco Fin.*

*Servicing Corp. v. Wilder*, 47 S.W.3d 335, 341 (Ky. Ct. App. 2001) (quoting *Louisville Bear Safety Serv., Inc. v. S. Cent. Bell Tel. Co.*, 571 S.W.2d 438, 439 (Ky. Ct. App. 1978)).  A contract is procedurally unconscionable if it is unfair on account of "the process by which [the] agreement is reached and the form of [the] agreement," and substantively unconscionable if it is unfair on account of "contractual terms that are unreasonably or grossly favorable to one side and to which the disfavored party does not assent."  *Id.* at 342 n.22.  Fogle alleges that the Agreement is both procedurally and substantively unconscionable because it "is a mass-produced, boiler-plate, pre-printed document, likely presented . . . within a lengthy stack of admissions paperwork" and because "[t]here is an obviously gross disparity of bargaining power."  DE 8-3 at 24.

This Court has addressed arguments virtually identical to Fogle's on multiple occasions. *See, e.g.*, *Gilliam*, 205 F. Supp. 3d at 894–95; *Working*, 2026 WL 63511, at *6.  And as in both *Gilliam* and *Working*, the Court now concludes that those arguments are unavailing.  The mere fact that the Agreement might have been part of a lengthy admissions packet does not render it unconscionable, *see Energy Home, Div. of S. Energy Homes, Inc. v. Peay*, 406 S.W.3d 828, 836 (Ky. 2013), and the Court will not declare the Agreement invalid based on the parties' putative uneven bargaining power alone, especially at this preliminary stage of the proceeding, *see id.* (citing *Schnuerle v. Insight Comms. Co., L.P.*, 376 S.W.3d 561, 576 (Ky. 2012)); *see also GGNSC Louisville Hillcreek, LLC v. Warner*, No. 3:13-CV-752, 2013 WL 6796421, at *8–9 (W.D. Ky. Dec. 19, 2013) ("That the ADR Agreement is a 'boiler-plate, pre-printed' document does not render it unconscionable[, and] Warner's concern that 'residents, like Mr. Warner' can feel overwhelmed at the time they are presented with the ADR Agreement is too vague to evaluate. Warner has provided the Court no facts to suggest Plaintiffs' representatives failed to provide him an opportunity to ask questions and understand the terms of the agreement."  (internal citation

omitted)).[3]  As such, the Court will not dismiss the Petition on account of the Agreement's alleged unconscionability.  And for the above-stated reasons, the Court denies each of Fogle's requests for relief under Rule 12(b)(6).

### 3. Hurley is not indispensable to the action, and Fogle's argument under Rule 12(b)(7) fails

Fogle contends that Hurley is a necessary party, that her joinder would destroy the Court's jurisdiction, and that she is indispensable to this action.  *See* DE 8-3 at 10–15.  On that basis, Fogle seeks dismissal under Rule 12(b)(7).  *See id.*  Certainly, if this Court and the state court were to reach different results on the enforceability of the arbitration agreement, Hurley "would face inconsistent procedural remedies."  *Gilliam*, 205 F. Supp. 3d at 889 (citing *Richmond Health Facilities—Kenwood, LP v. Nichols*, No. 5:14-CV-141, 2014 WL 4063823, at *5 (E.D. Ky. Aug. 13, 2014)); *see also Warner*, 2013 WL 6796421, at *3 (noting that a risk of inconsistent procedural remedies is sufficient to find a party necessary).[4]  Additionally, because Hurley—like Price—is a Kentucky citizen and subject to service, her joinder would defeat federal jurisdiction.  *See* DE 1-1 ¶ 13, at 8; *see also U.S. Motors*, 551 F.3d at 423.  Thus, Fogle has satisfied the first

---

[3] And in most meaningful senses, the Agreement at issue in the present case is identical to the one at issue in *Gilliam*.  The Agreement that Price signed is titled "with large, bold type which reads 'Alternative Dispute Resolution Agreement.'"  *Gilliam*, 205 F. Supp. 3d at 894; *see also* DE 11-1 at 1.  Moreover, "[h]alfway down the first page of the [A]greement in bold, capital letters, a disclaimer appears, indicating that by signing the [A]greement, the parties waive their constitutional right to have disputes decided in court."  *Gilliam*, 205 F. Supp. 3d at 894; *see also* DE 11-1 at 1.  And of course, the Agreement concludes by reminding the signatory about his legal rights and by confirming that he is acting of his own volition with sufficient understanding of the Agreement's terms.  *See Gilliam*, 205 F. Supp. 3d at 894; *see also* DE 11-1 at 5.

[4] Petitioners argue that a ruling compelling arbitration would bind Fogle in the state court action, forcing her to arbitrate against Hurley.  *See* DE 11 at 13.  As a result, Petitioners contend that Hurley is not a necessary party to the present case.  While Petitioners' argument would have some traction with our sister court, *see, e.g.*, *Brandenburg Health Facilities, LP v. Mattingly*, No. 3:15-CV-833, 2016 WL 3448733, at *2 (W.D. Ky. June 20, 2016); *GGNSC Louisville Hillcreek, LLC v. Watkins*, No. 3:15-CV-902, 2016 WL 815295, at *3 (W.D. Ky. Feb. 29, 2016), judges in the Eastern District have not consistently held that decisions compelling federal litigants to arbitrate bind state litigants, *see, e.g.*, *Gilliam*, 205 F. Supp. 3d at 889; *Nichols*, 2014 WL 4063823, at *5.  The Court does not decide that issue here.

two steps of the three-step inquiry. *See* FED. R. CIV. P. 19(a)–(b); *see also PaineWebber, Inc.*, 276 F.3d at 200. However, she has failed to show that Hurley is indispensable to the present action.

Of the four Rule 19(b) factors, three weigh against classing Hurley as an indispensable party.[5] First, a judgment rendered in Hurley's absence would not prejudice her or the existing parties. *See* FED. R. CIV. P. 19(b)(1). Whether the Court determines that Fogle must arbitrate with Petitioners or not, Hurley will retain a full opportunity to litigate against Fogle in state court and may invoke the Agreement to compel arbitration in that action if she chooses to do so. As to the existing parties, the Sixth Circuit stated in an analogous circumstance that "the possibility of having to proceed simultaneously in both state and federal court [wa]s a direct result of [the appellee's] decision to file a suit naming [the appellants] and [the non-joined party] in state court rather than to demand arbitration under the [parties'] Agreement." *PaineWebber, Inc.*, 276 F.3d at 202. The implication being that if Fogle must arbitrate against Petitioners and litigate against Hurley, any prejudice arising from the dual proceedings would be a consequence of Fogle's own actions. Put simply, that sort of self-imposed hardship is not the kind of prejudice contemplated by Rule 19(b)(1). *See also Gilliam*, 205 F. Supp. 3d at 889 (citing *Brookdale Senior Living, Inc. v. Caudill*, No. 5:14-CV-98, 2014 WL 3420783, at *5 (E.D. Ky. July 10, 2014)) ("Gilliam contends that permitting this matter to proceed in federal court would expose her to the risk of piecemeal

---

[5] The Court notes Fogle's heavy reliance on *Cytec Industries, Inc. v. Powell*, 630 F. Supp. 2d 680 (N.D. W. Va. 2009), in her request for Rule 12(b)(7) relief. *See* DE 8-3 at 14–15. However, *Cytec*'s logic has been consistently rejected by other jurists in the Eastern District as inconsistent with Sixth Circuit precedent. *See, e.g., Stacy*, 27 F. Supp. 3d at 783–84 (citing *PaineWebber, Inc.*, 276 F.3d at 202–03) ("[T]he Sixth Circuit has expressly rejected the argument that duplicative litigation and potentially inconsistent legal conclusions over an arbitration agreement are grounds for finding a party indispensable."); *GGNSC Stanford, LLC v. Johnson*, No. 5:16-CV-12, 2016 WL 4595212, at *3–4 (E.D. Ky. Sept. 2, 2016) (citing *PaineWebber, Inc.*, 276 F.3d at 202) ("The Sixth Circuit, however, has expressly rejected the argument that duplicative litigation and potentially inconsistent legal conclusions over an arbitration agreement are grounds for finding a party indispensable."). The Court agrees that *Cytec* is incompatible with the Sixth Circuit's indispensability analysis. *See PaineWebber, Inc.*, 276 F.3d at 202–03

17

litigation.  That risk, however, is a result of Gilliam's decision to file suit in state court rather than demanding arbitration under the Agreement.").  Because Fogle would not face any legitimate prejudice from Hurley's absence, the Court need not include protective provisions in the judgment, shape the relief, or take any other measures to mitigate prejudice.  *See* FED. R. CIV. P. 19(b)(2).

And should the Court compel arbitration in Hurley's absence, that judgment would assuredly prove adequate.  *See id.* at 19(b)(3).  The mere fact that Fogle might be forced to litigate against Hurley in state court while arbitrating her claims against Petitioners is not enough to find otherwise.  *See Gilliam*, 205 F. Supp. 3d at 890; *Working*, 2026 WL 63511, at *3.  As the Sixth Circuit has plainly recognized, "[h]aving to submit claims to arbitration in accordance with a valid arbitration clause . . . does not raise concerns about the adequacy of a judgment."  *PaineWebber, Inc.*, 276 F.3d at 205; *see also Moses H. Cone Mem'l Hosp.*, 103 S. Ct. at 941 ("[9 U.S.C. § 2] is a congressional declaration of a liberal federal policy favoring arbitration agreements, notwithstanding any state substantive or procedural policies to the contrary.  The effect of the section is to create a body of federal substantive law of arbitrability, applicable to any arbitration agreement within the coverage of the Act.").

In fairness, if the Court classified Hurley as an indispensable party and dismissed this action under Rule 12(b)(7), Petitioners would certainly be able to obtain, or at least pursue, an adequate remedy in state court.  *See* FED. R. CIV. P. 19(b)(4).  But although state court presents a sufficient alternative forum, the "existence of another forum does not, in and of itself, outweigh a plaintiff's right to the forum of his or her choice."  *PaineWebber, Inc.*, 276 F.3d at 205 (citation omitted); *see also Gilliam*, 205 F. Supp. 3d at 890.  That is, the clear lack of prejudice and the adequacy of the federal judgment controls.  As a result, the Court denies Fogle's request for Rule 12(b)(7) and Rule 19 relief.

4.  **The *Colorado River* abstention doctrine is inapplicable to the present case**

Fogle's final argument is that the Court should decline to exercise jurisdiction consistent with *Colorado River* abstention.  *See* DE 8-3 at 15–18.  On the present record, however, it is not clear that the state case is parallel to this Petition.  As addressed previously, Hurley is only a party to the state action.  And while Fogle seeks comprehensive relief on an array of tort claims in that matter, Petitioners seek narrow relief in the form of an order to compel arbitration in this matter. Those distinctions are not dispositive.  *See Bates*, 122 F. App'x at 806; *Heitmanis*, 899 F.2d at 528.  But they do bear on whether the state action is likely to make a determination on the enforceability of the Agreement's arbitration provisions.

Other jurists applying *Colorado River* have suggested that the parallelism inquiry turns on whether the state court has been asked—by any of the federal litigants—to adjudicate arbitrability. *See, e.g.*, *Golden Gate Nat'l Senior Care, LLC v. Slavin*, No. 5:17-CV-161, 2018 WL 1474072, at *3 (E.D. Ky. Mar. 26, 2018) ("Nothing in the record before this Court indicates that any of the parties to this action have requested the state court to make any determinations regarding the arbitration agreement or the arbitrability of the estate's state-law claims.  Accordingly, the Court cannot find that this action and the state-court action are parallel.").  Consistent with that notion, federal courts often decline to find state actions parallel in instances where the state court is not asked to evaluate the enforceability of an arbitration agreement.  *See Working*, 2026 WL 63511, at *4.  In contrast, when the state court *is* asked to conduct such an inquiry—either by the party bringing the federal action, *see Preferred Care of Del., Inc. v. VanArsdale*, 676 F. App'x 388, 391, 393–94 (6th Cir. 2017), or the party that initiated the state court action, *see Watkins*, 2016 WL 815295, at *1–3—federal courts generally determine that the state action is parallel.

The ambiguity in the present case arises from the fact that, although Fogle suggests that Petitioners answered in state court and requested enforcement of the Agreement's arbitration provisions, *see* DE 8-3 at 2, Petitioners state that they have only answered and have "sought no determination in the State Court Action regarding the enforceability of the Agreement." *See* DE 11 at 19.  Importantly, Fogle does not appear to contest Petitioners' claimed inaction in her reply.  *See generally* DE 12.  Without a more comprehensive record, the Court is unwilling to decide for the movant—who bears the burden of proof on this issue—and conclude that these two actions are parallel.  *See Answers in Genesis of Ky., Inc. v. Creation Ministries Int'l, Ltd.*, 556 F.3d 459, 467 (6th Cir. 2009) (allocating movant the "burden in proving that abstention is required").  As a result, Fogle's *Colorado River* abstention argument fails.

Even assuming the actions are parallel, the *Colorado River* factors do not justify abstention.  The first factor—whether the state court has assumed jurisdiction over any property—weighs against abstention.  The parties do not allege that the Kentucky court has taken control of any property, or indeed, allege that any property is in issue at all.  *See Romine*, 160 F.3d at 341 (emphasizing that the first factor supports exercising jurisdiction where no property is at issue in the action).  Likewise, the second factor—whether the federal forum is less convenient to the parties—counsels against abstention.  This inquiry "relates to geographical considerations, not to the relative jurisdictional scope of state versus federal courts," and the parties do not suggest that litigating in the Eastern District of Kentucky would prove any more burdensome than litigating in Kentucky state court.  *PaineWebber, Inc.*, 276 F.3d at 207.  Thus, these two factors unambiguously indicate that the Court should exercise jurisdiction.

While the third factor—the avoidance of piecemeal litigation—may appear to favor abstention, it does not.  Both the Supreme Court and the Sixth Circuit have made clear that the

FAA's primary purpose is to enforce arbitration agreements, even if doing so results in piecemeal proceedings. *See Moses H. Cone Mem'l Hosp.*, 103 S. Ct. at 939 (noting that the parties' need to proceed in different fora was "not the result of any choice between the federal and state courts[, but] because the [FAA] *requires* piecemeal resolution when necessary to give effect to an arbitration agreement"); *R.J. Griffin & Co. v. Beach Club II Homeowners Ass'n, Inc.*, 3 F. App'x 43, 45 (6th Cir. 2001) ("[I]t is rarely appropriate for a federal court to abstain from ruling on a motion to compel arbitration."). Fogle's desire to avoid litigating a single issue in multiple fora is simply "insufficient to overcome the strong federal policy supporting arbitration." *PaineWebber, Inc.*, 276 F.3d at 207 (citing *Moses H. Cone Mem'l Hosp.*, 103 S. Ct. at 939). Similarly, the fourth factor—the order in which jurisdiction was obtained—does little to support abstention. Although the state action was filed first, the importance of that timing is substantially weakened by the fact that this Court, not the state court, was the first forum asked to weigh the enforceability of the arbitration agreement. *See id.* at 207–08 (citing *First Franklin Fin. Corp. v. McCollum*, 144 F.3d 1362, 1364–65 (11th Cir. 1998)) (noting that the order in which jurisdiction was obtained can weigh against dismissal even when the state action was filed earlier, so long as the federal court petitioners acted promptly once they learned of the state court litigation).

The fifth factor—the source of governing law—weighs heavily against abstention. Although state law governs issues of contract formation, the FAA supplies the controlling substantive law on the enforceability of arbitration agreements, and the Sixth Circuit has recognized a strong federal interest in adjudicating such questions. *See id.* at 208. In fairness to Fogle, the sixth factor—the adequacy of the state court action to protect the federal plaintiff's rights—does appear to favor abstention. Despite their apparent lack of confidence in the Kentucky judiciary, this Court is certain that Petitioners could adequately enforce any arbitration right they

hold in the state forum, which is run by competent, oath-bound jurists.  *See id.* (citing *Southland Corp. v. Keating*, 104 S. Ct. 852, 861 (1984)) (noting that state courts have full authority to protect federal arbitration rights).

However, the two final factors are damaging to Fogle's position.  The seventh factor—the relative progress of the state and federal proceedings—clearly works against abstention.  At the time this Petition was filed, the issue of arbitrability had not been raised or addressed in the state court action, while this Court has been asked to decide that precise issue.  *See Working*, 2026 WL 63511, at *4 ("[W]hile Working filed her action in state court prior to Good Shepherd and Plainview filing the present action, there is no evidence in this record that the state court has been asked to address the arbitration issue at all."); *see also PaineWebber, Inc.*, 276 F.3d at 208.  And although the eighth factor—the presence or absence of concurrent jurisdiction—typically weighs in favor of abstention in instances where state and federal courts possess concurrent jurisdiction, that fact alone "is insufficient to justify abstention 'where a congressional act provides the governing law and expresses a preference for federal litigation.'"  *Gilliam*, 205 F. Supp. 3d at 891 (quoting *PaineWebber, Inc.*, 276 F.3d at 208–09).

Taken together, the Court's balancing of these factors does not establish the kind of exceptional circumstances required to justify abstention.  *See PaineWebber, Inc.*, 276 F.3d at 206. And that balancing certainly fails to overcome the heavy presumption the Court must afford in favor of exercising its jurisdiction.  *See Moses H. Cone Mem'l Hosp.*, 103 S. Ct. at 937. Accordingly, the Court denies Fogle's request for abstention pursuant to *Colorado River*.  As such, the Court DENIES DE 8.

## IV.    CONCLUSION

For the above-stated reasons, the Court ORDERS as follows:

1.  The Court GRANTS DE 13.

2.  The Court DENIES DE 8.  Respondent shall file an Answer within 14 days of this

    Order's entry.

This the 5th day of March, 2026.

**Signed By:**

**_Robert E. Wier_**

**United States District Judge**